J-E01007-18

2019 PA Super 136

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
RAYMOND DALE PAYNE, :
:
Appellant : No. 604 WDA 2016

Appeal from the PCRA Order April 13, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No.: 2562 of 1976

BEFORE: BENDER, P.J.E., PANELLA, J., SHOGAN, J., LAZARUS, J., OLSON,
J., STABILE, J., DUBOW, J., KUNSELMAN, J., and MURRAY, J.

OPINION BY DUBOW, J.: **FILED APRIL 29, 2019**

Appellant, Raymond Dale Payne, appeals from the April 13, 2016 Order

denying his Petition filed pursuant to the Post Conviction Relief Act ("PCRA"),

42 Pa.C.S. §§ 9541-9546. After careful review, we reverse the decision of the

PCRA court and grant Appellant a new degree-of-guilt hearing.

In 1977, Appellant pled guilty to murder generally, and three judges

were empaneled to decide Appellant's degree of guilt ("Degree of Guilt

Panel"). The Commonwealth presented evidence to support its position that

Appellant committed a First-Degree Murder while Appellant presented

evidence to support his claim of Third-Degree murder. The Degree of Guilt

Panel convicted Appellant of First-Degree Murder. On August 5, 1977, the

lower court sentenced Appellant to a term of life in prison without parole.

Appellant filed a Notice of Appeal, and our Supreme Court affirmed Appellant's

Judgment of Sentence on January 24, 1979. **Commonwealth v. Payne**, 396 A.2d 630 (Pa. 1979).

After several unsuccessful attempts at post-conviction relief, on January 8, 1997, Appellant filed a PCRA Petition, which, *inter alia*, requested DNA testing on the seminal fluid recovered from the victim's body. The PCRA court denied Appellant's Petition, a panel of this Court affirmed that order, and our Supreme Court denied Appellant's petition for allowance of appeal. **Commonwealth v. Payne**, 704 A.2d 1120 (Pa. Super. 1997) (unpublished memorandum), *appeal denied*, 717 A.2d 533 (Pa. 1998).

On February 6, 2003, Appellant filed a Motion for DNA testing pursuant to the then-newly passed provision of the PCRA permitting DNA testing under certain circumstances. **See** 42 Pa.C.S. § 9543.1. The PCRA court denied the Motion, and Appellant filed a Notice of Appeal to this Court. On November 18, 2003, a panel of this Court affirmed the Order of the PCRA court, and on May 11, 2004, our Supreme Court denied Appellant's Petition for Allowance of Appeal. **Commonwealth v. Payne**, 841 A.2d 577 (Pa. Super. 2003) (unpublished memorandum), *appeal denied*, 626 WAL 2003 (Pa. filed May 11, 2004).

On May 16, 2011, Appellant filed a complaint in the United States District Court for the Western District of Pennsylvania against the Erie County District Attorney's Office alleging violations of 42 U.S.C. § 1983 for its refusal to permit DNA testing.

On September 9, 2011, during the pendency of the federal action, Appellant filed a second motion for DNA testing pursuant to Section 9543.1. On October 4, 2011, the PCRA court again denied relief. Appellant filed a Notice of Appeal to this Court, and on July 31, 2012, this Court affirmed the Order denying Appellant relief. On July 12, 2013, our Supreme Court denied Appellant's Petition for Allowance of Appeal. **Commonwealth v. Payne**, 55 A.3d 152 (Pa. Super. filed July 31, 2012) (unpublished memorandum), *appeal denied*, 69 A.3d 601 (Pa. 2013).

On December 16, 2014, the United States District Court signed a stipulated Order permitting post-conviction DNA testing. The DNA test results established conclusively that Appellant was excluded as a contributor to the seminal fluid found on the victim's body.

On August 21, 2015, Appellant, through counsel, filed a PCRA Petition asserting that he is entitled to a new trial or degree-of-guilt hearing based on this after-discovered evidence. On April 13, 2016, the PCRA court entered a final Order and Opinion denying Appellant relief.

Appellant timely filed a Notice of Appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925. On November 15, 2017, this Court certified this case for *en banc* review.

On appeal, Appellant presents three questions for our review.

> [1.] Did the PCRA court err in finding that the [after-]discovered DNA evidence was not likely to change the outcome of [Appellant's] criminal proceeding notwithstanding that the [after-discovered] evidence rebuts the Commonwealth's overall theory

of the case and disproves a key inference that the prosecution and finder of fact relied on to establish the intent necessary for conviction?

[2.] Did the PCRA court err to the extent that it held the [after-] discovered evidence was immaterial or not exculpatory?

[3.] Did the PCRA court err by not considering [Appellant's] claims under the United States and Pennsylvania constitutions?

Appellant's Brief at 4.

For the reasons discussed below, we find that the PCRA court erred when it concluded that the DNA evidence was not likely to change the result of the Degree of Guilt Panel. The PCRA court erroneously focused on other evidence in the record to conclude that the DNA evidence would not likely change the result of the Degree of Guilt Panel; this is not the proper analysis. The proper focus is whether the after-discovered evidence significantly refutes an assertion on which the Degree of Guilt Panel and the Commonwealth placed significant weight. Because the Commonwealth argued and the Degree of Guilt Panel accepted the theory that Appellant murdered the victim while he raped her and the DNA evidence refutes the assertion that Appellant raped the victim, we find that Appellant proved by a preponderance of the evidence that the DNA evidence would likely result in a different verdict. We, thus, reverse the decision of the PCRA court.

This Court reviews the denial of a PCRA petition to determine whether the record supports the PCRA court's findings and whether its order is

otherwise free of legal error. ***Commonwealth v. Fears***, 86 A.3d 795, 803 (Pa. 2014).

The relevant provision of the PCRA requires a petitioner to plead and prove by a preponderance of the evidence that his conviction resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi). In order to successfully prove an after-discovered evidence claim under Section 9543(a)(2)(vi), the petitioner must show that "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." ***Commonwealth v. Cox***, 146 A.3d 221, 228 (Pa. 2016) (citation omitted).

In this case, there is no dispute that Appellant met the first three requirements. The issue is whether Appellant has established by a preponderance of the evidence that the DNA evidence "would have changed the outcome of the trial if it had been introduced."[1]

---

[1] There is no dispute that a change in the outcome of a degree-of-guilt hearing qualifies under these PCRA provisions as a change in the outcome of the trial. ***See Commonwealth v. Bonaccurso***, 625 A.2d 1197, 1201 (Pa. Super. 1993).

When evaluating whether a petitioner has established by a preponderance of the evidence that the after-discovered evidence would likely produce a different verdict, a court must examine the persuasiveness of the new evidence assuming the fact-finder believes it. **Commonwealth v. Fiore**, 780 A.2d 704, 713-14 (Pa. Super. 2001). This inquiry includes evaluations of (1) the nature of the new evidence; (2) whether, and to what extent, the new evidence is consistent or inconsistent with other trial testimony; and (3) whether, and to what extent, the new evidence is consistent or inconsistent with documentary evidence. **Id.**

Our Supreme Court has examined several case-specific factors, including: (1) the prosecution's theory at the original trial, and the difficulty of making this argument in light of the new evidence; and (2) the prosecutor's closing remarks, which may demonstrate the importance of the new evidence. **See Commonwealth v. Bulted**, 279 A.2d 158, 161-62 (Pa. 1971);

Applying these principles, the Supreme Court in **Commonwealth v. Mount,** 257 A.2d 578 (Pa. 1969), ordered that the trial court resentence the appellant as a result of after-discovered evidence. In **Mount**, a three-judge panel had held a degree-of-guilt hearing and concluded that the appellant committed First-Degree Murder because the appellant raped the victim and then killed her. At the sentencing hearing, the appellant argued that he only stabbed the victim and did not rape her. The Commonwealth, however, presented evidence from a laboratory technician specializing in blood and

other body fluid stains who testified that she analyzed a pair of underpants located among the appellant's belongings, found seminal fluids and bloodstains, and concluded that the bloodstains matched the deceased's blood type. The panel imposed a sentence of "death in the electric chair." *Id.* at 579. After the imposition of sentence, appellant discovered that the laboratory technician had lied in other proceedings about her professional qualifications and she had not fulfilled her educational requirements for a laboratory technician.

In ordering a new sentencing hearing, the Supreme Court first analyzed the impact that the after-discovered evidence had on the theory of the Commonwealth and Degree of Guilt Panel. The Supreme Court found that the after-discovered evidence was crucial because the technician's testimony was the only evidence that established that it was the appellant who raped the victim and the Degree of Guilt Panel placed "considerable weight on [the technician's] testimony." *Id*. at 582.

The Supreme Court concluded that the degree-of-guilt panel "should have the opportunity to evaluate the qualifications of the [laboratory technician] in the light of her lack of theoretical background sufficient to credit her as a laboratory technician and to evaluate her long experience working in a laboratory to determine whether she is qualified to testify as to laboratory tests and laboratory findings. Such inquiry is mandated in order that the court below might determine the weight, if any, to be given to her testimony upon

which the Commonwealth relied, in large measure, for proof of the occurrence of rape." *Id*.

Similarly, in **Commonwealth v. Cooney,** 282 A.2d 29 (Pa. 1971), the Supreme Court found that the after-discovered evidence of a bullet lodged in the defendant's head supported defendant's claim of self-defense and "serves to support and confirm the testimony given by appellant and makes his theory of the crime much more believable." *Id*. at 31. **See also Bulted,** 279 A.2d at 162 (concluding that newly discovered evidence of a deposition transcript of the decedent's paramour refuted the Commonwealth's theory that the decedent did not have a paramour and corroborated the appellant's testimony that she did and "it would be monstrously unjust to deny [the] appellant a second trial at which the jury will have an opportunity to weigh the [after discovered evidence] before reaching their verdict.").

Most important to our analysis in this case is that the Supreme Court has determined that a reviewing court, when considering whether the after-discovered evidence is likely to change the outcome at trial, should not consider evidence in the record not relied upon explicitly by the trial court in rendering its degree of guilt decision. In **Mount, supra**, the Commonwealth argued that even if the Supreme Court ignored the evidence of rape, there was still sufficient evidence to convict the appellant of First-Degree Murder because the evidence demonstrated that the appellant also committed a Robbery. The Supreme Court, however, rejected this argument because "an

examination of the opinion of the three-judge panel indicates that the judges emphasized the heinous character of this particular rape and predicated their sentence on the rape feature of the crime." 257 A.2d at 582.

Similarly, in **Commonwealth v. Valderrama,** 388 A.2d 1042 (Pa. 1978), the Supreme Court found that the after-discovered evidence was significant enough to grant a new trial to the appellant even though other evidence in the record was sufficient to sustain the convictions. *Id*. at 1045. In **Valderrama**, the appellant was charged with murder and rape. At trial, he presented an alibi defense that on the day of the crime, he was living and working in Puerto Rico. The Commonwealth refuted the appellant's evidence that he was in Puerto Rico by presenting the testimony of an employee of the Social Security Administration who stated that the appellant's employment records did not demonstrate that the appellant was working in Puerto Rico at the time of the crime. The Commonwealth argued that this testimony demonstrated that the appellant was not working in Puerto Rico at the time of the crime. *Id.* at 1044.

After the conviction, the appellant obtained new evidence from his employer in Puerto Rico showing that when appellant's employer reported the appellant's wages to the Social Security Administration, it did so without a social security number. As a result, the appellant argued that records of the Social Security Administration that were presented to the jury were incomplete because his employer failed to provide appellant's social security

number and not because appellant was not working in Puerto Rico at the time of the murder.

The Supreme Court first found that the testimony of the appellant's co-conspirator was sufficient to sustain the convictions. However, the Supreme Court concluded that the employment records are "of such a nature and character that a different verdict will likely result if a new trial is granted." ***Id.*** at 1045. The Supreme Court reasoned that at trial, the Commonwealth had argued that the appellant never worked in Puerto Rico and "the incomplete employment records supported this assertion and cast doubt on [the] appellant's alibi defense." **Id.** The completed records, however, provided substantial support for appellant's alibi defense and the Court concluded that a different verdict would likely result. ***Id.***

Finally, we note that the Supreme Court does not require that a petitioner establish that the after-discovered evidence proves his innocence beyond a reasonable doubt. ***See Mount***, ***supra***, at 582 (after granting the appellant a new sentencing hearing based on after-discovered evidence, the Supreme Court noted that the Degree of Guilt Panel might find that the laboratory technician's "practical experience gained over a long period of years in laboratory work did qualify her to make proper and sound laboratory findings"); ***Cooney***, ***supra*** at 31 (after granting the appellant a new trial based on after-discovered evidence the Supreme Court noted that "it is possible that a new trial would result in another conviction, but we believe

that it is very likely that a different verdict would result"). Rather, a petitioner must only establish by a preponderance of the evidence that the exculpatory after-discovered evidence "would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi).

Applying these principles to this case, we analyze the basis for the trial court's denial of the PCRA Petition. The trial court denied the PCRA petition because "the evidence, including [Appellant's] statement to Crawford County District Attorney Donald Lewis and his concealment of [the victim's] body, clearly established [Appellant's] guilt of First-Degree Murder; accordingly, the DNA evidence would not have changed the outcome." PCRA Court Opinion, 4/13/16, at 9. The PCRA court, however, failed to apply the correct legal standard. As noted in the above case law, the analysis is not based on whether the record contains other evidence sufficient to convict the Appellant of First-Degree Murder; rather, the focus is on whether Appellant has proven by a preponderance of the evidence that the after-discovered evidence would likely have changed the Commonwealth's theory of the case and the decision of the Degree of Guilt Panel. **Mount**, 257 A.2d at 582; **Bulted**, 279 A.2d at 161-62. As discussed below, both the Degree of Guilt Panel and the Commonwealth placed significant weight on the theory that Appellant murdered the victim while raping her. Because the DNA evidence refutes the evidence of rape, the after-discovered would likely have changed the decision of the Degree of Guilt Panel.

A review of the Degree of Guilt Panel's Opinion demonstrates the significant weight that the panel placed on the conclusion that Appellant raped the victim in determining that Appellant committed Murder of the first degree. The Degree of Guilt Panel placed significant, if not exclusive, weight on the testimony of Anthony Lee Evans, who was incarcerated with Appellant in Erie County prison. The Degree of Guilt Panel characterized Mr. Evans' testimony as an "admission" that Appellant made to his cellmate and "the most damaging" to the Appellant. Trial Court Opinion, 7/18/77, at 5, 6. The Degree of Guilt Panel summarized Mr. Evans' testimony about Appellant killing the victim during the commission of a rape as follows:

> Mr. Evans testified that [Appellant] confided in him and eventually described in detail what had occurred. He said that [Appellant] told him that while he and [the victim] were riding in his truck he had put some "DOWNS" (pills) in the victim's beer; that while she was under the influence of the drug **he took her to the woods where he tied her up in the manner above described and began having sexual intercourse with her; that she begged him to stop, crying and screaming; that she "MADE HIM MAD"" and he grasped the rope "ON EACH SIDE OF HER AND PULLED IT TIGHT UNTIL SHE WAS DEAD."**

*Id*. (emphasis in original).

The Degree of Guilt Panel also relied heavily upon Mr. Evans' testimony that Appellant told him that the victim's "death was a culmination of a sexual fantasy that he had been living with for a long time; that HE LIKES TO TIE WOMEN UP AND DO CRAZY THINGS TO 'EM." *Id.* (emphasis in original).

The Degree of Guilt Panel also relied heavily upon the testimony of Paul Daube, a chemist employed by the Pennsylvania State Police, to corroborate

Mr. Evans' testimony that the victim died while "protesting a sexual attack upon her" because Mr. Daube conducted tests and "found the presence of seminal acid phosphatase in [the victim's anal and vaginal area]." *Id.* at 6.

The Degree of Guilt Panel then compared Mr. Evans' testimony to the statement that Appellant made to the police and concluded that since Mr. Evans' testimony is similar to Appellant's statement, except for the manner in which the victim died, that Appellant's theory of the cause of death "lacks credibility." *Id.*

Based on this analysis, the Degree of Guilt Panel then concludes that the murder of the victim "was willful, deliberate and premeditated" and Appellant's "admission to his cellmate verifies that conclusion and removes all doubt." *Id.*[2]

We note that the Degree of Guilt Panel summarized other evidence presented at the hearing, but did not place any weight on that other evidence in reaching its conclusion of First-Degree Murder. Rather, the Degree of Guilt Panel relied exclusively upon the testimony of Mr. Evans and Mr. Daube.

Similarly, the Commonwealth at the Degree of Guilt Hearing asserted the theory that Appellant killed the victim while she resisted a sexual assault. The prosecution repeatedly emphasized the evidence of seminal fluid during

---

[2] The Degree of Guilt Panel also noted that the "testimony before the court is also consistent with a slaying in the perpetration of a forceful rape which would constitute murder in the second degree. However, having concluded that [Appellant] is guilty of an intentional killing, we need not further pursue the theory of felony murder." Trial Court Opinion at 7.

closing argument when urging the panel to convict Appellant of First-Degree Murder. During closing argument at the Degree of Guilt hearing, the prosecution argued: "[A]ll of the words from [Appellant] are consistent with the fact that this was an intentional killing; **that at least it was a rape**, **that the facts of the case show that there was intercourse between the two**[.]" N.T., 6/28/77, at 17 (emphasis added) (asserting also "that there was sexual activity between these two people"). Most significantly, the prosecution also argued that the presence of seminal fluid, presumed to be Appellant's, was proof of the intent required for a First-Degree Murder conviction. *Id.*

With the basis for the Degree of Guilt Panel's decision and the Commonwealth's theory in mind, we turn to the implications of the DNA evidence. The new DNA evidence is uncontroverted[3] physical evidence that excluded Appellant as a possible contributor of the DNA samples that Mr. Daube had analyzed and testified about at the Degree of Guilt Hearing. Because the Degree of Guilt Panel relied upon Mr. Daube's testimony to corroborate Mr. Evan's testimony about Appellant murdering the victim while raping her, this corroboration evidence is no longer valid and the Degree of Guilt Panel erred in placing significant weight on it.

---

[3] Although the parties dispute the inferences arising from this new DNA evidence, there is no factual dispute about the expert's conclusions in these PCRA proceedings. *See* R.R. at 365a-368a ("Stipulations").

The DNA evidence also discredits Mr. Evans' testimony that the victim's death was a culmination of a sexual fantasy and, thus, fundamentally alters the Degree of Guilt Panel's credibility decision in weighing Appellant's version of events against Evans' testimony and the prosecution's version of events. Furthermore, the new DNA evidence makes it doubtful that the prosecution would present this theory and the Degree of Guilt Panel would accept it.

In light of the foregoing, Appellant has satisfied the PCRA's stringent requirements under these unique circumstances and has established by a preponderance of the evidence that the DNA evidence would have likely changed the decision of the Degree of Guilt Panel. We, thus, reverse the PCRA court. In light of this ruling, we do not address Appellant's other claims of error.

Order reversed.

President Judge Emeritus Bender, and Judge Panella, Judge Lazarus, Judge Kunselman, and Judge Murray join the Opinion

Judge Shogan files a dissenting opinion in which Judge Olson and Judge Stabile join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/29/2019</u>