J-S23030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TONEY DEBERRY | : | |
| | : | |
| Appellant | : | No. 160 EDA 2020 |

Appeal from the PCRA Order Entered December 20, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0005529-1987,
CP-09-CR-0005530-1987, CP-09-CR-0005531-1987

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TONEY DEBERRY | : | |
| | : | |
| Appellant | : | No. 161 EDA 2020 |

Appeal from the PCRA Order Entered December 20, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0005529-1987,
CP-09-CR-0005530-1987, CP-09-CR-0005531-1987

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TONEY DEBERRY | : | |
| | : | |
| Appellant | : | No. 162 EDA 2020 |

Appeal from the PCRA Order Entered December 20, 2019
In the Court of Common Pleas of Bucks County Criminal Division at

No(s): CP-09-CR-0005529-1987,
CP-09-CR-0005530-1987, CP-09-CR-0005531-1987

BEFORE: NICHOLS, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McCAFFERY, J.: **FILED AUGUST 12, 2020**

In these consolidated cases,[1] Toney DeBerry (Appellant) appeals from the order entered in the Bucks County Court of Common Pleas denying his serial petition filed pursuant to the Post Conviction Relief Act[2] (PCRA), seeking collateral relief from his jury convictions of, *inter alia*, rape, burglary and escape[3] in three separate cases. On appeal, Appellant asserts the PCRA court erred in dismissing his request for a new trial based on an admission by the Department of Justice (DOJ) and Federal Bureau of Investigation (FBI) that some FBI examiners before 2000 may have overstated their conclusions regarding microscopic hair comparison testimony. We affirm.

The facts underlying Appellant's arrest and conviction were summarized by this Court in a prior appeal as follows:

> In the early morning hours of August 8, 1987, [A]ppellant . . . broke into a residence known as The Woman's Place, by cutting open and removing a window screen. The Woman's Place, located in Doylestown Township, is a temporary residential shelter for women and their children, who have been physically, mentally, or sexually abused. At the time [A]ppellant broke into the shelter,

---

[1] This Court granted Appellant's application to consolidate these appeals on February 3, 2020. Order, 2/3/20.

[2] 42 Pa.C.S. §§ 9541-9546.

[3] 18 Pa.C.S. §§ 3121, 3502, 5121(a).

- 2 -

Pamela Weaver and Alfrea Styles were sleeping in separate first floor bedrooms with their children.

Appellant first entered the room of Pamela Weaver and awakened her while holding a knife to her throat. For the next hour Ms. Weaver was sexually assaulted by [A]ppellant. She was repeatedly raped and forced to commit oral sex upon [A]ppellant. When finished, [A]ppellant gagged Ms. Weaver with her own underwear and tied her hands with an electrical cord. Appellant threatened to kill Ms. Weaver if she left the room to notify police. He then exited into a lighted hallway.

Next, [A]ppellant proceeded into Alfrea Styles' bedroom. Again, [A]ppellant awakened his victim while holding a knife to her throat. At knifepoint, [A]ppellant performed oral sex upon Ms. Styles while she lay in her bed. Appellant then forced Ms. Styles to leave with him. He took her to a secluded area behind the spring house building at the far end of the parking lot and again forced her to perform oral sex upon him. Appellant then raped Ms. Styles. During the attack, [A]ppellant and Ms. Styles observed lights flashing in the woods behind their location. During the course of the attack on Ms. Styles, Ms. Weaver had summoned the police. Appellant was soon after apprehended in a wooded area adjacent to the spring house.

At the time of these attacks, [A]ppellant had been placed in the work release program from the Bucks County Rehabilitation Center. Under the rules of the program, [A]ppellant was supposed to return to the center immediately after finishing work. On the night of the attack, [A]ppellant had finished working at approximately midnight. Instead of returning to the center, [A]ppellant went to two separate bars and then proceeded with the attacks at the woman's shelter.

After being apprehended, [A]ppellant was presented to both victims for identification. Pamela Weaver positively identified appellant as the attacker. Alfrea Styles stated that [A]ppellant looked like the attacker but did not make a positive identification. Ms. Styles later testified at trial that she knew immediately that [A]ppellant was the attacker but feared for her safety if she positively identified him to police in his presence.

*Commonwealth v. DeBerry*, 207 PHL 1993 (unpub. memo. at 1-3) (Pa.

Super. 1993).

Appellant was arrested and charged in three separate cases. At Docket No. CP-09-CR-5529-1987 (5529), Appellant was charged with escape for his failure to return the Bucks County Rehabilitation Center after work release. At Dockets CP-09-CR-5530-1987 (5530) and CP-09-CR-5531-1987 (5531), Appellant was charged with the sexual assault of Weaver (5530) and Styles (5531), respectively. The cases were consolidated and tried together before a jury commencing on February 1, 1988.

The PCRA court summarized some of the additional evidence presented at trial:

> [A]n official from the Bucks County Men's Correctional Center testified that Appellant failed to return from a job within the appointed time and was wanted for escape. The time he was missing included the time the rapes occurred at the shelter.
>
> Another corrections officer testified that after his capture, Appellant, while in a cell, was "hollering" to no one in particular that "you white dick, your white women love it." Three days before the rape, a fellow inmate on work release with Appellant testified that, as they passed the shelter on the way to work at the Doylestown Inn, Appellant said, "Yes, there is some nice women. One day I might have me some of those . . . I have to stop in there one day and have me one of those." Additionally, the Commonwealth offered expert testimony from an FBI agent that [a pubic hair] found at the [Weaver] crime scene was consistent with Appellant's hair.

PCRA Ct. Op., 1/9/20, at 2 (unpaginated) (record citations omitted). On February 3rd, the jury returned a verdict of guilty on the following charges: (1) at Docket No. 5529, escape; (2) at Docket No. 5530, burglary, rape,

involuntary deviate sexual intercourse (IDSI),[4] terroristic threats,[5] simple assault,[6] and possession of an instrument of crime (PIC);[7] and (3) at Docket No. 5531, burglary, rape, IDSI, kidnapping,[8] unlawful restraint,[9] terroristic threats, simple assault, and PIC. On April 28, 1988, the trial court sentenced Appellant to an aggregate term of 33½ to 67 years' imprisonment.

This Court affirmed the judgment of sentence on direct appeal, and the Pennsylvania Supreme Court denied Appellant's petition for allocatur review. **Commonwealth v. DeBerry**, 1638 PHL 1988 (unpub. memo.) (Pa. Super. Jan. 10, 1989), *appeal denied*, 156 E.D. 1989 (Pa. Oct. 13, 1989). Appellant filed his first PCRA petition, *pro se*, on June 18, 1992. The PCRA court denied relief, and this Court affirmed on appeal. **DeBerry**, 207 PHL 1993. Appellant filed several additional petitions for collateral relief in the ensuing years, none of which resulted in relief.

On November 26, 2002, Appellant filed a *pro se* motion seeking DNA testing, of, *inter alia*, the pubic hair recovered from Weaver's bed. **See** 42

---

[4] 18 Pa.C.S. § 3123.

[5] 18 Pa.C.S. § 2706.

[6] 18 Pa.C.S. § 2701(a)(3).

[7] 18 Pa.C.S. § 907.

[8] 18 Pa.C.S. § 2901.

[9] 18 Pa.C.S. § 2902.

Pa.C.S. § 9543.1.[10]   Counsel was appointed, and on January 23, 2006, the

PCRA court ordered DNA testing be conducted.  ***See*** Docket Entry, 1/23/06.[11]

The PCRA court reviewed the DNA reports *in camera*, and, on October 19,

2006, entered the following order:

> AND NOW, this 19th day of October, 2006, having reviewed the DNA testing results, it is hereby ORDERED that [Appellant's] Post Conviction Relief Petition filed November 11, 2002 is dismissed, as the Post-Conviction DNA testing results **did not produce exculpatory results** that would establish [Appellant's] actual innocence of the offense for which he was convicted.

Order, 10/19/06 (emphasis added).  ***See also*** N.T., PCRA H'rg, 12/14/17, at

6.  At that time, the DNA report was not made part of the certified record.

On July 17, 2015, Appellant filed the present PCRA petition, *pro se*,

asserting he was in possession of after-discovered evidence.[12]   Three days

later, on July 20th, Appellant's former counsel, the Bucks County Public

---

[10] "An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment . . . may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction."   42 Pa.C.S. § 9543.1(a), *subsequently amended* by Act 2018-147 (S.B. 916), § 1, *approved* October 24, 2018, *eff.* December 24, 2018.

[11] We note the January 23, 2006, order granting DNA testing is not included in the certified record.

[12] ***See*** 42 Pa.C.S. § 9542(a)(2)(vi) (petitioner may be entitled to post-conviction collateral relief if they plead and prove their conviction resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.").

Defender's Office, also filed a PCRA petition on Appellant's behalf, invoking the newly-discovered facts exception to the PCRA's time restrictions.[13] **See** Appellant's Post-Conviction Relief Act Petition (Counseled PCRA Petition), 7/20/15, at 4 (unpaginated), *citing* 42 Pa.C.S. § 9545(b)(1)(ii). Both petitions were based upon a letter former counsel received from the DOJ, dated May 28, 2015. The letter informed counsel that the DOJ "recently undertook a review of certain evidence that was presented in [Appellant's] case." DOJ Letter to Counsel, 5/28/15.[14] Attached to the May 28th letter, was a letter dated May 21, 2015, which the DOJ sent to the Bucks County District Attorney's office, which prosecuted Appellant. The May 21st letter stated, in relevant part:

> DOJ has been engaged in a review of microscopic hair comparison reports and testimony presented by the FBI Laboratory before December 31, 1999, after which mitochondrial DNA testing[15] became routine. [I]n some cases, FBI Laboratory

---

[13] It appears counsel filed this petition unaware Appellant had filed a *pro se* petition a few days earlier.

[14] The DOJ's letter to Appellant's former counsel, dated May 28, 2015, was attached to Appellant's *pro se* PCRA petition, filed on July 17, 2015. The May 28th letter referred to a May 21, 2015, letter — which the DOJ sent to the Bucks County District Attorney's Office — that detailed the DOJ's findings. The May 21st letter was also attached to Appellant's July 2015 *pro se* petition.

[15] In **Commonwealth v. Chmiel**, 889 A.2d 501 (Pa. 2005) (direct appeal), the Pennsylvania Supreme Court explained:

> Humans have both nuclear DNA and mitochondrial DNA. Mitochondrial DNA is found outside of the cell nucleus, in the mitochondria, and is inherited only from one's mother

> examiners exceeded the limits of science by overstating the conclusions that may appropriately be drawn from a positive association between evidentiary hair and a known hair sample. . . .

DOJ Letter to Commonwealth, 5/21/15, at 1.  However, the letter stated that the DOJ "found no error either in the FBI Laboratory report or in any examiner testimony" in Appellant's case.  *Id.*  Nevertheless, the letter also stated that "the Innocence Project and the National Association of [Criminal] Defense Attorneys ("IP/NACDL") believe that an erroneous report or testimony was used in [Appellant's] case."  *Id.*  Counsel's petition averred that the improper hair analysis testimony tainted Appellant's conviction, and the petition was timely filed within 60 days of the date Appellant received the DOJ letter. Counseled PCRA Petition at 3-4.

On November 13, 2015, the Commonwealth filed a motion to dismiss the petition as time-barred.  Specifically, the Commonwealth averred the newly-discovered fact Appellant relied upon was the **opinion** of the IP/NACDL that the examiner who testified at Appellant's trial exceeded the limits of appropriate testimony.  Commonwealth's Motion to Dismiss Serial Petition, 11/13/15, at 5-6 (unpaginated).  Moreover, the Commonwealth emphasized that the hair sample at issue had already been tested for mitochondrial DNA and the results established that Appellant **could not be excluded** as the

_____

> (distinguishable from DNA forming the nucleus of each cell, which is inherited from both parents).

*Id.* at 513 n.9 (record citations omitted).

source of the hair. *Id.* at 6. The Commonwealth also argued: (1) the evidence presented at trial apart from the hair analysis was "substantial;" (2) Appellant previously challenged counsel's ineffectiveness for failing to adequately investigate the FBI hair analysis testimony; and (3) the Washington Post published an article in April of 2015, stating that the FBI admitted its hair analysis testimony was flawed, which was more than 60 days before Appellant filed his *pro se* petition. *Id.* at 7-8.

New counsel, Stuart Wilder, Esquire, was appointed,[16] and filed an amended petition on September 15, 2017. Attorney Wilder asserted the petition was timely based upon the newly-discovered facts exception and *Commonwealth v. Burton*, 158 A.3d 618 (Pa. 2017). *See id.* at 638 ("[T]he presumption that information which is of public record cannot be deemed 'unknown' for purposes of subsection 9545(b)(1)(ii) **does not apply** to *pro se* prisoner petitioners."). However, his only request for relief was to order the Commonwealth to submit the results of the DNA test to "the Combined DNA Index System (CODIS) to determine if anyone else in the system has DNA that matches his, proving [Appellant's] long stated claim of innocence." Appellant's Motion to Amend PCRA Petition, 9/15/17, at 4.

---

[16] The Office of the Public Defender requested the appointment of private counsel because Appellant had previously alleged his public defender was ineffective. *See* Appellant's Petition for Appointment of Private Counsel, 7/20/15, at 1.

The PCRA court conducted an evidentiary hearing on December 14, 2017, at which time the 2006 mitochondrial DNA test results were made part of the record. *See* N.T., 12/14/17, at 6-7. The report concluded that mitochondrial DNA "sequences obtained from [the pubic hair and from Appellant] are the same. Therefore, [Appellant] (or another member of the same maternal lineage) cannot be excluded as the source of [the pubic hair]." *Id.*, Exhibit C-1, Mitochondrial DNA Report, 8/11/05, at 1 (unpaginated). At the hearing, Attorney Wilder stated that while he believed the petition was timely filed, he "couldn't find anything else that could be done that wasn't done" by prior counsel who represented Appellant during the DNA testing period. N.T., 12/14/17, at 12. Moreover, the Commonwealth pointed out that the remedy offered in the DOJ letter is mitochondrial DNA testing, which had already occurred in Appellant's case. *Id.* at 16. On December 20, 2017, the PCRA court entered an order dismissing Appellant's petition. Appellant filed a timely appeal. In its opinion, the court clarified that it dismissed the petition because it was untimely filed. *See* PCRA Ct. Op., 2/6/18, at 6 (concluding Appellant relied on a "new source of previously knowable facts and not a newly-discovered fact" since Appellant had challenged the "integrity of the field of microscopic hair comparison analysis" at trial).

On appeal, Attorney Wilder filed a **_Turner_**/**_Finley_**[17] "no merit" letter and petition to withdraw. However, a panel of this Court denied counsel's petition to withdraw, vacated the order dismissing Appellant's petition, and remanded for further proceedings, directing the PCRA court to "make a timeliness determination in light of" **_Commonwealth v. Chmiel_**, 173 A.3d 617 (Pa. 2017) (PCRA appeal).[18] **_Commonwealth v. DeBerry_**, 86 EDA 2018 (unpub. memo. at 9-10) (Pa. Super. 2018).

Upon remand, on January 24, 2019, the PCRA court entered an order directing both Appellant and the Commonwealth to submit memoranda of law "addressing the issues of jurisdiction and merit in regards to [Appellant's] PCRA." Order, 1/24/19. Attorney Wilder again filed an application for leave to withdraw and a **_Turner_**/**_Finley_** "no merit" letter. In the "no merit" letter, counsel argued the petition was timely filed within 60 days of the date the DOJ informed Appellant of the FBI's possible flawed analysis. Attorney

---

[17] **_Commonwealth v. Turner_**, 544 A.2d 927 (Pa. 1998); **_Commonwealth v. Finley_**, 550 A.2d 213 (Pa. Super. 1988) (_en banc_).

[18] In **_Chmiel_**, the Pennsylvania Supreme Court determined the petitioner established the 42 Pa.C.S. § 9545(b)(1)(ii) newly-discovered facts exception when he filed a petition within 60 days of the publication of the same Washington Post article the Commonwealth referenced herein. The article reported that the FBI, for the first time, "publicly admitted that the testimony and statements provided by its analysts about microscopic hair comparison analysis were erroneous in the vast majority of cases." **_Chmiel_**, 173 A.3d at 625. The **_Chmiel_** Court held that the FBI's acknowledgment of the flawed science involved in hair analysis constituted a "newly-discovered fact" sufficient to invoke the PCRA's time for filing exception. **_Id._** at 626-27.

Wilder's "No Merit" Letter, 1/31/19, at 5 (unpaginated). However, counsel acknowledged he could not demonstrate Appellant was entitled to relief since DNA testing of the hair sample revealed inculpatory results, and the sample was consumed during the testing.[19] *Id.* On February 13th, the Commonwealth filed a memorandum in opposition to PCRA relief.

Thereafter, on April 30, 2019, Attorney Wilder withdrew his application to withdraw, and filed a motion seeking both leave to amend the PCRA petition and a hearing. Specifically, counsel argued this Court's decision in **Commonwealth v. Payne**, 210 A.3d 299 (Pa. Super. 2019) (*en banc*), *appeal denied*, 218 A.3d 1201 (Pa. 2019), represented a "change in the law" with respect to a petitioner's burden of proof in an after-discovered evidence challenge. Appellant's Motion for Hearing, 4/30/19, at 2 (unpaginated). He asserted the **Payne** Court held a petitioner must establish only by a preponderance of the evidence that the after-discovered evidence would have changed the outcome of the trial — not, as previously held, that the new evidence if presented would have "resulted in an acquittal." *Id.* Thereafter, the Commonwealth filed a supplemental motion to dismiss the petition asserting, *inter alia*, that Appellant's reliance on **Payne** was "wholly

_____

[19] Counsel averred that he had "consulted with a private DNA specialist who performs work for defense counsel[, and s]he informed [him] that after looking at the testimony from the original trial, and the results of the testing reported in 2006 and 2009, that she would not be able to adduce any evidence that would indicate that [Appellant] was not a person likely to possess the DNA on the hair sample attributable to him." Attorney Wilder's "No Merit" Letter at 5.

unfounded." Commonwealth's Supplemental Motion to Dismiss, 7/16/19, at 7 (unpaginated).

On September 9, 2019, the PCRA court issued notice of its intent to dismiss Appellant's petition as both untimely filed and meritless. Appellant filed a responsive brief on September 30th. Nevertheless, on December 20, 2019, the PCRA court entered an order denying relief. Specifically, the court found Appellant's petition "was timely," but denied relief "for lack of merit." Order, 12/20/19. These timely appeals followed.[20]

On January 13, 2020, Appellant filed an application seeking consolidation of the three appeals. The following day, this Court issued Appellant, at each docket, a *per curiam* rule to show cause why the appeals should not be quashed as violative of the Supreme Court's ruling in **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (holding that "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed"). Appellant filed timely responses to the show cause orders, and on January 28, 2020, the Court entered an order at each docket referring the matter to the merits panel. Subsequently, on February 3, 2020, this Court granted the application for

_____

[20] On December 23, 2019, the PCRA court entered an order at each docket, directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied with the orders, and filed a Rule 1925(b) statement at each docket. The PCRA court filed a joint opinion on January 9, 2020.

consolidation "without prejudice for the merits panel to quash any or all of [the] appeals upon review."  Order, 2/3/20.

Appellant raises the following two issues on appeal, which we have reordered for ease of disposition:

> 1.  Do separate notices of appeal in three related cases that visibly, patently and obviously only refer to a single docket number satisfy the requirement that separate notices of appeal referencing only a single docket number be filed in an appeal?
>
> 2.  Is the admission by an agency that its expert's testimony, more than twenty years earlier on behalf of the Commonwealth, was scientifically invalid of sufficient weight to require the award of a new trial?

Appellant's Brief at 3.

First, Appellant contends that we should not quash this appeal pursuant to **Walker**.  We agree.

In **Walker**, "the Commonwealth filed a single notice of appeal from an order that disposed of four motions to suppress evidence filed by four criminal defendants . . . at four different docket numbers."  **Walker**, 185 A.3d at 971. The Pennsylvania Supreme Court held that the common practice of filing a single notice of appeal from an order disposing of cases at more than one docket violated the Pennsylvania Rules of Appellate Procedure.  **Id.** at 976. **See also** Pa.R.A.P. 341(a), *note* ("Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed.").  Thus, the Court announced a

- 14 -

prospective ruling[21] that now requires appellants to file separate notices of appeal "when a single order resolves issues arising on more than one lower court docket[.]" **Walker**, 185 A.3d at 977. The Court further held: "The failure to do so will result in quashal of the appeal." **Id.**

Subsequently, in **Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019), a panel of this Court applied the **Walker** holding narrowly. In that case, the defendant filed one notice of appeal from an order dismissing his post-conviction collateral petition dealing with four, related lower court dockets. **Id.** at 1143. The defendant listed all four docket numbers on the notice of appeal, which was then, presumably, photocopied by the clerk of courts so that one identical copy of the notice was placed in each of the certified records. **Id.** at 1143, 1144 n.1. This Court quashed the appeal, finding it violated the ruling in **Walker**.[22] **Id.** at 1144. The **Creese** panel opined:[23]

> We read our Supreme Court's decision in **Walker** as instructing that **we may not accept a notice of appeal listing multiple docket numbers**, even if those notices are included in the records of each case. **Instead, a notice of appeal may contain only one docket number.**

---

[21] The **Walker** decision was filed on June 1, 2018.

[22] We note the notice of appeal in **Creese** was filed on December 20, 2018; thus, it was subject to **Walker**'s prospective ruling. **See Creese**, 216 A.3d at 1143.

[23] We note the ruling was divided, with one judge filing a dissenting opinion.

- 15 -

*Id.* (emphases added). The ***Creese*** Court did **not** apply its ruling prospectively, so that were we to apply the holding herein, we would have no choice but to quash Appellant's appeal.

Recently, however, an *en banc* panel of this Court overruled the language in ***Creese*** mandating that a notice of appeal may contain only one docket number. In ***Commonwealth v. J. Johnson***, ____ A.3d ____, 1620 WDA 2018 (Pa. Super. 2020) (*en banc*),[24] the defendant, who was appealing his judgment of sentence entered at four separate dockets, filed four notices of appeal pursuant to ***Walker***. *Id.* at 3. Each notice of appeal listed all four docket numbers; however, the defendant italicized one docket number on each notice "to identify which notice corresponded with each appealed case." *Id.* The *en banc* panel overruled the pronouncement in ***Creese*** that "a notice of appeal may contain only one docket number." ***J. Johnson***, 1620 EDA 2018 at 12 (citation and emphasis omitted). The panel opined:

> Importantly, we observe that Rule 341 and ***Walker*** make no mention of case numbers on a notice of appeal. To be sure, the error in ***Walker*** was the filing of a single notice of appeal affecting multiple cases and several defendants. The bright-line rule set forth in ***Walker*** only required an appellant to file a "separate" notice of appeal for each lower court docket the appellant was challenging.
>
> Here, it is indisputable that [the defendant] filed a separate notice of appeal for each of the four dockets below, because he italicized only one case number on each notice of appeal. Unlike ***Creese***, the clerk of courts played no role in typing four separate

---

[24] The appeals at ***J. Johnson*** were also docketed in this Court at Nos. 2045 EDA 2018, 2046 EDA 2018, and 2047 EDA 2018.

notices of appeal and italicizing the individual docket numbers on [the defendant's] behalf. Based on our review of **Walker** and Rule 341, [the defendant] filed separate notices that perfected four appeals from each of the four common pleas court dockets. The fact that the notices contained all four lower court numbers is of no consequence. Indeed, the Rules of Appellate Procedure are to be liberally construed to effectuate justice. Pa.R.A.P. 105(a); **see also** 1 Pa.C.S.A. § 1928(c). We should not invalidate an otherwise timely appeal based on the inclusion of multiple docket numbers, a practice that the Rules themselves do not expressly forbid.

By stating that each notice of appeal may contain only one number, **Creese** imposed upon appellants an additional requirement found in neither **Walker** nor Rule 341. Although our Supreme Court may adopt such a rule in the future, it did not do so in **Walker**. As such, in so far as **Creese** stated "a notice of appeal may contain **only one** docket number," 216 A.3d at 1144 (emphasis added), that pronouncement is overruled.

**Id.** at 11-12 (footnotes omitted).

We conclude the holding in **J. Johnson** is controlling under the facts of the present case. Here, the record reveals Appellant filed three separate notices of appeal. Although each notice listed all three docket numbers, two docket numbers were crossed out. Thus, each notice featured one (different) docket number that was not crossed out, signifying the appeal was from that docket number. **See** Appellant's Notices of Appeal, 12/20/19. Moreover, although all three notices were time-stamped at 3:51, the location of the stamps on the documents revealed they were not simply duplicates, copied by the clerk of courts. **See id.** Accordingly, because we conclude Appellant properly complied with the requirements of **Walker**, we decline to quash this appeal.

In his second issue, Appellant contends he is entitled to PCRA relief based upon after-discovered evidence, namely "the 2015 admission by the FBI that its hair analysis technique was unreliable." Appellant's Brief at 16. Further, he insists "the Commonwealth's reliance on the junk science fundamentally altered the [jury's] decision on guilt or innocence" regardless of whether he would have been convicted without the evidence. *Id.* at 19. Thus, Appellant argues he is entitled to a hearing on his claim. *Id.* at 22.

Our standard of review of an order denying PCRA relief is well-established. "[W]e examine whether the PCRA court's determination 'is supported by the record and free of legal error.'" ***Commonwealth v. Mitchell***, 141 A.3d 1277, 1283–84 (Pa. 2016) (citation omitted). Furthermore, "[t]he PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Cruz***, 223 A.3d 274, 277 (Pa. Super. 2019) (citation omitted).

The statutory requirement that a PCRA petition be filed within one year of the date the judgment of sentence becomes final is both "mandatory and jurisdictional in nature[,]" and a PCRA court may not ignore the untimeliness of a petition to address the merits of the issues raised therein. ***Commonwealth v. Taylor***, 67 A.3d 1245, 1248 (Pa. 2013). ***See also*** 42 Pa.C.S. § 9545(b)(1). Here, Appellant's judgment of sentence was final on December 12, 1989, 60 days after the Pennsylvania Supreme Court denied Appellant's petition for allocatur review, and Appellant did not file a petition for *certiorari* in the United States Supreme Court. ***See*** U.S. Sup. Ct. Rule 20.1

(*eff.* June 30, 1980, *repealed* Jan. 1 1990). Thus, the present petition, filed **more than 25 years** later, is facially untimely.[25] **See** 42 Pa.C.S. § 9545(b)(1).

Nevertheless, an untimely petition may be considered if one of the three timeliness exceptions applies. 42 Pa.C.S. § 9545(b)(1)(i)-(iii). A petition invoking one of the exceptions must be filed "within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).[26] Here, Appellant invoked the "newly-discovered facts" exception set forth in Section 9545(b)(1)(ii).

Under this subsection, a petitioner must plead and prove "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii). "[T]he focus of this exception 'is on the newly discovered facts, not on a newly discovered or newly willing source for previously known

---

[25] We note that when the Section 9545 timing requirements were enacted in 1995, the statute provided a grace period for those petitioners whose judgments of sentence were final before the effective date of the Act, permitting them to file a **first** PCRA within one year of the act's effective date, or no later than January 16, 1997. **Commonwealth v. Williams**, 828 A.2d 981, 987 n.9 (Pa. 2003), *citing* Section 3(1) of the Act of Nov. 17, 1995 (Spec. Sess. No. 1) P.L. 1118, No. 32, found as a note to 42 Pa.C.S. §§ 9542, 9543, 9544, 9545, and 9546. Because the present petition is not Appellant's first, and was filed after the January 1997 extended deadline, he cannot benefit from the grace period.

[26] This subsection was amended in 2018 to provide petitioners with one year to invoke a timeliness exception. However, the amendment applies only to "claims arising on Dec. 24, 2017 or thereafter." 42 Pa.C.S. § 9545(b)(2). Thus, is it not applicable here.

facts.'" ***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa. 2015) (citation omitted). Furthermore, we note Section 9545(b)(1)(ii) is a jurisdictional threshold, which "does **not** require any merits analysis of an underlying after-discovered-evidence claim." ***Id.*** at 177 (emphasis added). "Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim" pursuant to Section 9543(a)(2)(vi). ***Id.*** at 176. ***See*** 42 Pa.C.S.A. § 9543(a)(2)(vi) (providing relief under the PCRA if a petitioner pleads and proves "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced").

In the present case, the PCRA court found Appellant established the newly-discovered evidence exception to the time-for-filing requirements. PCRA Ct. Op., 1/9/20, at 3. We agree.

The DOJ letter forwarded to Appellant in May of 2015 from his former counsel was the first time Appellant (an incarcerated, unrepresented defendant) learned that his case had been reviewed by the DOJ to determine if the expert hair analysis testimony "exceeded the limits of science." ***See*** DOJ Letter to Commonwealth at 1. Although the DOJ "found no error," the letter stated that the IP/NADCL disagreed. ***Id.***

The Commonwealth insists, however, that the only "newly-discovered fact" in Appellant's *pro se* and original counseled petitions is the DOJ letter. Commonwealth's Brief at 19. To the extent present counsel also referred to the Washington Post article, the Commonwealth maintains that the DOJ letter

did not mention the Washington Post article, and none of Appellant's counseled or *pro se* petitions established when he learned the information in that article. **See** Commonwealth's Brief at 19-21. Furthermore, it emphasizes that the DOJ's letter informed Appellant that "both the DOJ and FBI found **no error** in the testimony of the FBI examiner at Appellant's trial." **Id.** at 24 (emphasis added).

However, our review of the record reveals Attorney Wilder asserted, in the September 2017 amended petition, that Appellant first learned of the potentially flawed testimony when prior counsel forwarded him the DOJ letter:

> [Appellant] filed his petition within sixty days of learning of information published by the Innocence Project and the Washington Post on April 18 and April 20, 2015, and from M[a]y 21, 2015 letter received by the Bucks County Public Defender's Office, concerning the unreliability of evidence presented at his trial, **which he only learned about when he received the May 28, 2015 letter from the Public Defenders' Office**.

Appellant's Amended PCRA Petition, 9/15/17, at 4 (emphasis supplied). **See also** Attorney Wilder's "No Merit" Letter at 5. Although the Washington Post article and FBI press release — which first reported the FBI's admission that its hair analysis was flawed — were in the public domain as early as April of 2015, the PCRA court explained that Appellant was incarcerated and **not represented by counsel** at that time. PCRA Ct. Op., 1/9/20, at 5. In **Burton**, the Pennsylvania Supreme Court held that "the presumption that information which is of public record cannot be deemed 'unknown' for purposes of subsection 9545(b)(1)(ii) **does not apply** to *pro se* prisoner petitioners." **Burton**, 158 A.3d. at 638 (emphasis added). Thus, we conclude

the record supports the PCRA court's finding that Appellant was first "made aware of the faulty FBI hair evidence by way of letter from the [DOJ] to the Bucks County Public Defender on May 28, 2015 and subsequent forwarding to him." PCRA Ct. Op., 1/9/20, at 5.

Furthermore, although the May 2015 letter stated that the DOJ found "no error" in the testimony at Appellant's trial, Appellant was not required to accept the DOJ's findings, particularly since the letter itself acknowledged that the IP/NACDL came to a contrary conclusion. **See** DOJ Letter to Commonwealth at 1 (stating the IP/NACDL "believe that an erroneous report or testimony regarding microscopic hair comparison analysis was used in this case"). Thus, Appellant was entitled to rely on the "newly-discovered fact" that the FBI's hair comparison was flawed in many cases, and to argue that it may have been so in his case.[27] Accordingly, we agree Appellant's petition was timely filed pursuant to 42 Pa.C.S. § 9545(b)(1)(ii).

---

[27] We do not agree with the Commonwealth's assertion that this Court's decision in **Cruz**, 223 A.3d 274, compels a different result. **See** Commonwealth's Brief at 21-23. In that case, like here, the PCRA petitioner was convicted based upon hair analysis testimony, and in July of 2015, the petitioner received a letter from the DOJ concerning its investigation of such testimony. **See Cruz**, 223 A.3d at 275. However, in **Cruz**, the DOJ letter informed the petitioner that the testimony in his case "contained erroneous statements." **Id.** The petitioner filed a PCRA petition in September of 2015 asserting newly-discovered facts. **Id.** The PCRA court initially dismissed the petition without a hearing, and this Court affirmed, finding the petition was not based on a newly-discovered fact, but rather, on "a new source of previously knowable facts." **Id.** at 276. The Supreme Court subsequently vacated that ruling, and remanded the case to the PCRA court for reconsideration in light of **Chmiel**. **Id.**

Nevertheless, in order to obtain relief on his after-discovered evidence claim, Appellant must prove his conviction resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." **See** 42 Pa.C.S. § 9543(a)(2)(vi). In **Burton**, the Pennsylvania Supreme Court explained:

> [T]o prevail on an after-discovered evidence claim for relief under subsection 9543(a)(2)(vi), a petitioner must prove that (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

_____

The PCRA court again dismissed the petition, finding that the 60-day "time limit for asserting the newly-discovered fact exception started on April 20, 2015, the date of the FBI press release[,]" so that the petition, filed in September of 2015, was untimely. **Cruz**, 223 A.3d at 276. On appeal, this Court disagreed, concluding:

> Here, [the petitioner's] newly-discovered fact is the DOJ and FBI's specific admission that [the analyst's] testimony, in particular contains erroneous statements, not the DOJ and FBI's general admission that [the petitioner's] case might be one of the thousands of cases that was based on bad science. Thus, the July 27, 2015 DOJ letter, and not the FBI press release, triggered the sixty-day time limit.

**Id.** at 277. We do not conclude this decision undermines our conclusion herein. As noted above, Appellant averred he first learned of the potentially flawed testimony when he received the DOJ letter, and he filed the petition within 60 days of receipt of that letter. Although his letter stated the DOJ and FBI found no error in the analyst's trial testimony, it also stated that the IP/NACDL disagreed with that conclusion, and put Appellant on notice, for the first time, that the testimony might be flawed. Thus, **Cruz** does not compel a different result.

***Burton***, 158 A.3d at 629 (citations omitted).

Here, Appellant argues "[t]he 'fact' at issue in this matter is the 2015 admission by the FBI that its hair analysis technique was unreliable, and an offer of expert testimony to show that the FBI's 2015 admission was true." Appellant's Brief at 16. Relying on ***Payne***, 210 A.3d 299, Appellant asserts the focus should be on whether the after-discovered evidence "significantly refutes an assertion on which the [jury] and the Commonwealth placed significant weight" and not whether he would have been convicted of first-degree murder without the now discredited evidence. Appellant's Brief at 17, *quoting* ***Payne***, 210 A.3d at 302. He claims the ***Payne*** Court established a new standard "when evidence debunking Commonwealth scientific evidence requires a new trial." ***Id.***

We conclude Appellant's reliance on ***Payne*** is misplaced. In that case, the defendant pled guilty to murder generally in 1977. ***Payne***, 210 A.3d at 300. The case proceeded to a degree of guilt hearing before three judges, who convicted the defendant of first-degree murder, based upon the Commonwealth's theory that the defendant murdered the victim while he raped her. ***Id.*** at 300, 302. In 2014, a DNA test "established conclusively that [the defendant] was excluded as a contributor to [ ] seminal fluid found on the victim's body." ***Id.*** at 301. The defendant sought PCRA relief based upon this after-discovered evidence. ***Id.*** However, the PCRA court denied relief because it concluded the "DNA evidence was not likely to change the

results of the Degree of Guilt Panel" because there was other evidence in the record to support the first-degree murder conviction. *Id.* at 301-02.

In rejecting the PCRA court's analysis, the *en banc* panel opined:

The proper focus is whether the after-discovered evidence significantly refutes an assertion on which the Degree of Guilt Panel and the Commonwealth placed significant weight. Because the Commonwealth argued and the Degree of Guilt Panel accepted the theory that [the defendant] murdered the victim while he raped her and the DNA evidence refutes the assertion that [the defendant] raped the victim, we find that [the defendant] proved by a preponderance of the evidence that the DNA evidence would likely result in a different verdict.

*Id.* at 302.

The after-discovered DNA evidence that invalidated the Commonwealth's theory of the case in *Payne* is distinguishable from the newly-discovered evidence here. First, in the present case, there was no irrefutable finding that the analyst's testimony was wrong. Unlike the DNA evidence in *Payne*, which **excluded** the defendant as the source of the semen on the victim, here, the DOJ stated that, upon its review of the testimony in Appellant's case, there was no basis for relief. Rather, the IP/NACDL believed the testimony was improper. Moreover, and significantly, mitochondrial DNA testing established that Appellant **could not be excluded** as a contributor of the hair recovered from the scene. Thus, Appellant, or someone in his mother's lineage, was the source of the hair. *See Chmiel*, 889 A.2d at 513

- 25 -

n.9. Rather than exculpating Appellant, this evidence was inculpatory.[28] Indeed, in its letter to the Commonwealth, the DOJ offered mitochondrial DNA testing of the relevant hair evidence "[i]n the event . . . that further testing is appropriate or necessary." Commonwealth's DOJ Letter, at 2.

Appellant insists, however, that **Payne** "established that the debunking of junk science presented at a decades old trial entitles one to a new trial — even if a defendant would have been convicted without the evidence — if the Commonwealth's reliance on the junk science fundamentally altered the fact finder's decision on guilt or innocence." Appellant's Brief at 19. Fundamentally, he asks this Court to look at his trial through a narrow lens — focusing on the exculpatory new evidence debunking the hair analysis testimony, but ignoring the inculpatory mitochondrial DNA evidence. This is not what **Payne** requires us to do. Accordingly, Appellant is entitled to no relief.

Order affirmed.

---

[28] Appellant states in his brief that this "evidence does not establish that the hair was [his] and would not now be admissible to do so." Appellant's Brief at 19. While the mitochondrial DNA test did not conclusively establish the hair was Appellant's, it did narrow the culprits to a person in Appellant's mother's lineage. That fact, coupled with the other evidence implicating Appellant, strongly suggests he is the source of the hair. Moreover, Appellant provides no explanation why the DNA results would not be admissible at a retrial.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 8/12/2020*