J-S17028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MUNIR PANKERY :
:
Appellant : No. 2131 EDA 2024

Appeal from the PCRA Order Entered July 23, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004331-2014

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MUNIR PANKERY :
:
Appellant : No. 2132 EDA 2024

Appeal from the PCRA Order Entered July 23, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004332-2014

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED AUGUST 29, 2025**

Munir Pankery appeals from the order entered dismissing his Post Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

A jury convicted Pankery of second-degree murder, attempted murder, possessing an instrument of crime, aggravated assault, and two counts of carrying a firearm without a license. Pankery's convictions stem from the

murder of one victim, Anthony Hinds, and the attempted murder of a second victim, Corey Wright. We previously summarized the factual and procedural history of this case.

> [O]n December 28, 2013, shortly following reports of an armed robbery outside of the Studio 7 Bar in Philadelphia, police responded to a shooting near the same location. Upon arriving, the police found a forty-two-year-old victim, Anthony Hinds, deceased on the ground. The next day, the police were called to the scene of a double shooting at a Chinese restaurant, located a few doors down from the Studio 7 Bar. One of the victims, Corey Wright, had been shot from a close range five times, thrice in the head, once in the back and once in the chest. Unlike Mr. Hinds, however, Mr. Wright survived the shooting.
>
> Eventually, [Pankery] was charged at three separate dockets relating to the three criminal incidents near the Studio 7 bar. At docket 4331, he was charged with murder and a firearms violations in connection with the shooting death of Mr. Hinds. At docket 4332, related to the shooting of Mr. Wright, [Pankery] was charged with attempted murder, aggravated assault and firearms violations.

**Commonwealth v. Pankery**, No. 946 EDA 2016, 2017 WL 5713547, at *1 (Pa.Super. filed Nov. 28, 2017) (unpublished mem.) (footnote omitted). The court sentenced Pankery to life imprisonment. We affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal. **See id.**, *appeal denied*, 278 A.3d 855 (Table) (Pa. filed May 18, 2022).[1]

---

[1] In his first PCRA petition, Pankery claimed ineffective assistance of direct appeal counsel for failing to file a petition for allowance of appeal with our Supreme Court. The PCRA court denied the petition. On appeal, this Court reversed the order and remanded for the court to reinstate Pankery's right to file a petition for allowance of appeal *nunc pro tunc*. **See Commonwealth v.**
*(Footnote Continued Next Page)*

Pankery filed the instant, timely, *pro se* PCRA petition on July 13, 2022, and the court appointed counsel. Pankery filed a motion to proceed *pro se*, and the court granted his request following a ***Grazier*** hearing.[2] Subsequently, Pankery filed an amended PCRA petition in December 2023. He raised claims of ineffective assistance of direct appeal and trial counsel, asserted a ***Brady***[3] claim related to the Commonwealth's alleged withholding of misconduct by detectives involved in Pankery's case, and maintained that the cumulative effect of the alleged errors warranted a new trial.

Pankery maintained that direct appeal counsel was ineffective for the following reasons:

- failing to claim that the Commonwealth "committed misconduct by knowingly presenting perjured/false testimony" at trial;

- "not addressing the Trial Court[']s Supplemental Opinion on my direct appeal with regards to ***Bazemore*** claim" in which the court addressed the testimony of Wright; and

- not claiming "that the Trial Court abused its discretion by allowing the Commonwealth's witness Kamar Johnson to testify at trial after he violat[ed] the Court's sequestration order."

Amended PCRA Petition, filed 12/5/2023, at 3 (unpaginated).[4]

_____

***Pankery***, No. 1619 EDA 2020, 1620 EDA 2020, 2021 WL 2446277, at *5 (Pa.Super. filed June 15, 2021).

[2] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

[3] ***Brady v. Maryland***, 373 U.S. 83 (1963).

[4] ***Commonwealth v. Bazemore***, 614 A.2d 684 (Pa. 1992).

For trial counsel, Pankery presented the following claims of ineffectiveness:

- "not retrieving and presenting my juvenile records of drug abuse at trial";

- "not allowing the toxicologist expert to interview [Pankery] with [the juvenile records] before he testified at trial"; and

- "not retrieving and presenting the study that showed those who were dealing with withdraw[al] while being interrogated were more likely to confess to crimes they did not commit[.]"

***Id.***

In February 2024, Pankery filed a supplemental amended PCRA petition, claiming that the Commonwealth withheld "the misconduct history of Detective James Pitts before [his] trial, during direct appeal, and PCRA proceedings[.]" Supplemental Amended PCRA Petition, filed 2/16/24, at 2 (unpaginated). With the court's permission, Pankery filed a second supplemental amended PCRA petition, claiming after-discovered evidence regarding witness testimony from 2017 about misconduct by Detective Pitts, information about a physical altercation Detective Pitts had with a witness, and a grand jury's recommendation to prosecute Detective Pitts. ***See*** Second Supplemental PCRA Petition, filed 5/31/24, at 1-3.

The court issued notice of its intent to dismiss Pankery's PCRA petition without a hearing, pursuant to Pa.R.Crim.P. 907(1). ***See*** Rule 907 Notice, filed 6/14/24. Pankery responded to the court's Rule 907 notice, and the court dismissed the petition. This timely appeal followed.

- 4 -

Pankery raises the following issues:

1. Whether the PCRA Court erred in dismissing [Pankery's] **Brady** claim, w[h]ere the Commonwealth withheld the misconduct material of former detective James Pitts, and Detective Matthew Farley?

2. Whether the PCRA Court erred in dismissing [Pankery's] after-discovered evidence claim of the habit and routine practice of coercion by former detective James Pitts?

3. Whether the PCRA Court erred in dismissing [Pankery's] ineffective assistance of counsel claim w[h]ere trial counsel knew of the misconduct of former detective James Pitts, and failed to investigate potential witnesses who could have testified at [Pankery's] motion to suppress hearing, and/or trial?

4. Whether the PCRA Court erred in dismissing [Pankery's] ineffective assistance of counsel claim w[h]ere direct appeal counsel failed to raise that the Commonwealth committed misconduct by presenting perjured/false testimony at trial to convict [Pankery]?

5. Whether the PCRA Court erred in dismissing [Pankery's] ineffective assistance of counsel claim w[h]ere direct appeal counsel failed to raise that the Trial Court abused its discretion in allowing Kamar Johnson to testify after violating the Court's sequestration order?

6. Whether the PCRA Court erred dismissing [Pankery's] cumulative errors claim?

Pankery's Br. at 7.

When reviewing the court's dismissal of a PCRA petition, we must determine whether the court's conclusions are supported by evidence of record and whether the court committed any legal error. **Commonwealth v. Phillips**, 31 A.3d 317, 319 (Pa.Super. 2011).

**BRADY VIOLATION**

- 5 -

To establish a **Brady** violation, the petitioner must plead and prove: "(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." **Commonwealth v. Roney**, 79 A.3d 595, 607 (Pa. 2013) (citation omitted). A petitioner may show prejudice by demonstrating there is a "reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." **Commonwealth v. Conforti**, 303 A.3d 715, 730 (Pa. 2023) (citation omitted).

Pankery asserts that the Commonwealth withheld information about misconduct by Detective Pitts. Additionally, he claims that he learned about the misconduct of another detective, Detective Farley. Pankery claims that this information is "both exculpatory and impeaching." Pankery's Br. at 11. He argues that if this information had been disclosed before trial, counsel could have called both detectives to testify about Pankery's allegations that his statements to police were coerced. He further argues that the proposed testimony "would have been subject to impeachment with the adverse findings regarding former [D]etective Pitts, and Detective Farley" had it been timely disclosed. **Id.** at 12. Pankery also points out that "[t]he only evidence presented at [Pankery's] trial to support a conviction for second degree murder was the statement by former [D]etective Pitts." **Id.**

The PCRA court rejected Pankery's **Brady** claim and determined that evidence of the detectives' misconduct would not have likely resulted in a

different outcome of the trial. The court stated there was overwhelming evidence against Pankery and noted that neither detective testified at Pankery's trial or suppression hearing.

> Here, there is not a reasonable probability that the result of [Pankery's] trial would have been different had evidence of Detective Pitts' or Detective Farley's misconduct been disclosed to the defense prior to trial. Neither Detective Pitts nor Detective Farley testified at [Pankery's] trial or pre-trial suppression hearing. While it is true that [Pankery's] suppression motion alleged coercion, [Pankery] only alleged the interrogation environment was coercive because he was suffering from the effects of drug withdrawal at the time, and therefore did not voluntarily waive his **_Miranda_** rights. [Pankery] never alleged any misconduct as to Detective Farley, and only stated that Detective Pitts was "a little aggressive" at one point when [Pankery] referred to him as an officer rather than a detective. [Pankery] testified at his pre-trial motions hearing that no one threatened him and no one "laid their hands on [him]." Therefore, [Pankery's] sworn testimony at his suppression hearing refutes any claim that he was coerced by detectives Farley and Pitts.

> Moreover, the evidence against [Pankery] at trial was overwhelming. [Pankery] was charged with the murder of Anthony Hinds, who was shot and killed during a robbery in the only morning hours of December 28, 2013. [Pankery] was also charged with the attempted murder and aggravated assault of Corey Wright, who was shot on December 29, 2013. As to Hinds, [Pankery] gave a statement to Detective Robert Daly in which [Pankery] stated that, while he did not shoot Hinds, he had loaned his gun to Wright so that Wright could rob Hinds, thereby admitting he was an accomplice in the robbery and confessing to second degree murder. As to Wright, [Pankery] confessed to shooting Wright in Lucky Chinese Restaurant with a .32 automatic Kel-Tech handgun.

> In addition to [Pankery's] confessions to Detective Daly, ballistics analysis revealed that the bullets taken from the bodies of Hinds and Wright were fired from the same handgun, that is, the Kel-Tech handgun that was found in

> [Pankery's] residence. Forensic testing revealed that [Pankery's] fingerprint was on the magazine of gun. Moreover, subsequent testing revealed that the H&M jacket [Pankery] told detectives that he wore on the night Hinds was killed had gunshot residue on it.

PCRA Ct. Op., filed 10/28/24, at 9-11 (citations omitted).

The PCRA court's conclusion is supported by the record and free of legal error. Pankery did not demonstrate that the outcome of his trial would have been different with this additional information. As the court stated, there was overwhelming evidence against Pankery, including his statement in which he admitted that he gave a gun to Wright that ultimately was used to kill Hinds and that he shot Wright. Notably, the statement with these admissions was not taken by Detective Pitts or Detective Farley. **See** Commonwealth Exhibit 89 (Pankery Statement). This claim is meritless.

**AFTER-DISCOVERED EVIDENCE**

Pankery maintains that after his trial, he discovered that there were misconduct allegations against Detective Pitts. He claims that he learned about this information in December 2023 after receiving a letter from the Commonwealth that Detective Pitts had "been identified by the District Attorney's Office as [an] officer[] who ha[s] or may have engaged in misconduct that necessitates disclosure." Pankery's Br. at 16, Exhibit A ("Pittman Letter"). With the letter, the Commonwealth included various papers containing information about cases involving Detective Pitts' misconduct. This included testimony at a 2017 hearing about Detective Pitts' misconduct, the Commonwealth's statement in 2011 that a judge's

statements about Detective Pitts' interrogation techniques could not be ignored, and a warrant for Detective Pitts' arrest for perjury and physical coercion of a suspect during a 2010 interrogation. Pankery's Br. at 15-16 & Exhs. E, F, G. Pankery asserts that this after-discovered evidence "does much more than impeach credibility" and "independently establishes that it is more likely than not that former [D]etective Pitts acted in accordance with those habits in taking [Pankery's] statement." Pankery's Br. at 17. He further argues that the outcome of his trial would have been different because his statement to Detective Pitts was the only evidence used to support the second-degree murder conviction.

To succeed on a claim of after-discovered evidence, the petitioner must plead and prove: "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." **Commonwealth v. Payne**, 210 A.3d 299, 302 (Pa.Super. 2019) (*en banc*) (citation omitted).

This claim is also meritless. In view of the overwhelming evidence against Pankery, including his statement to police, Pankery has not shown that evidence of Detective Pitts' misconduct would likely have resulted in a different verdict. As noted, Detective Pitts did not testify at Pankery's trial and was not the detective who recorded Pankery's statement admitting to the shooting or providing the weapon used in the murder.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Pankery claims that trial counsel should have investigated potential witnesses who could have testified about Detective Pitts' misconduct. He notes that counsel was aware of Detective Pitts' misconduct as her former client gave a statement to Detective Pitts in an unrelated case that was suppressed after a finding that it was the product of coercion. Pankery's Br. at 18. Pankery also maintains that he informed trial counsel about Detective Pitts' coercive conduct. Pankery claims that if these witnesses had been willing to testify about Detective Pitts' coercive conduct, it could have led to Pankery's statement being suppressed or in the alternative if the statement was not suppressed, the witnesses still could have testified about Detective Pitts' coercive behavior.

Counsel is presumed effective. ***Commonwealth v. Mason***, 130 A.3d 601, 618 (Pa. 2015). To overcome this presumption, a petitioner must plead and prove that: "(1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner." ***Id.*** Prejudice is proven by showing "that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different." ***Id.*** "Failure to establish any prong of the test will defeat an ineffectiveness claim." ***Commonwealth v. Walker***, 36 A.3d 1, 7 (Pa. 2011).

To demonstrate that counsel was ineffective for failing to call a potential witness, the PCRA petitioner must establish:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009) (citation omitted).

Here, Pankery did not establish that the purported witnesses were available or willing to testify for the defense. In his petition and on appeal, Pankery did not produce anything from the witnesses saying they were available and willing to testify. As such, he has failed to show that counsel was ineffective for failing to call them.

Pankery also maintains that direct appeal counsel was ineffective for not raising a claim of the court's alleged error in permitting the Commonwealth's only fact witness, Kamar Johnson, to testify after he violated the court's sequestration order. He states the witness heard the defense's argument attacking the witness's inconsistencies and motive, and that trial counsel objected to the witness being allowed to testify. Pankery alleges that rather than following the Rules of Evidence, the court created its own remedy by allowing the witness to testify. He claims that if the court had barred the witness's testimony, there is a reasonable probability that the outcome of the

case would have been different. Pankery also states that he told direct appeal counsel that he wished to raise the court's error on direct appeal.

When there is a violation of a sequestration order by a witness, the court has discretion in determining the proper remedy. **Commonwealth v. Rose**, 172 A.3d 1121, 1127 (Pa.Super. 2017). "In exercising its discretion, the trial court should consider the seriousness of the violation, its impact on the testimony of the witness, and its probable impact on the outcome of the trial." **Id.** (citation omitted). Additionally, the court should consider "whether . . . the party calling the witness procured his disobedience." **Id.** (citation omitted).

On the first day of trial, before opening statements, the court explained to the gallery that any witness in the courtroom needed to leave because of its sequestration order. **See** N.T., Trial, 3/9/16, at 14. Both sides then proceeded to give its opening statement. During the defense opening, defense counsel claimed that Johnson was not credible and was unreliable. **See id.** at 74-77. Before the Commonwealth called Johnson as a witness, the court inquired whether Johnson had been in the courtroom during the trial. Johnson told the court that he had been in the courtroom from the beginning and had heard the court's instruction for witnesses to leave the courtroom, but claimed that he did not understand it. **Id.** at 115-116. Counsel asked the court to bar Johnson from testifying for violating the order of sequestration. **Id.** at 117. The court denied counsel's request, stating that it did not "see how [Pankery was] prejudiced, but what I will allow you to do is bring out during his cross

- 12 -

that he sat here and he heard your opening statement[.]" ***Id.*** at 118-19. The court also noted that Rule 615 of the Rules of Evidence requires that there "be some deliberate attempt to mislead the jury" before the remedy of barring a witness may be imposed. ***Id.*** at 118.

The underlying claim lacks arguable merit. The trial court determined that the witness's violation was not intentional and that the Commonwealth did not procure the witness's disobedience to the order. These findings have a basis in the record, and the claim on appeal would have been subject to an abuse of discretion standard. Additionally, the court permitted counsel to cross-examine the witness for violating the order. The PCRA court did not err in rejecting this ineffectiveness claim. ***See Commonwealth v. Spotz***, 896 A.2d 1191, 1210 (Pa. 2006) ("Counsel will not be deemed ineffective for failing to raise a meritless claim").

**CUMULATIVE ERRORS**

Pankery maintains that the cumulative effect of the alleged errors by the Commonwealth, the ineffectiveness of trial and direct appeal counsel, and the misconduct of Detective Pitts resulted in the denial of a fair trial and due process.

"[W]here a claimant has failed to prove prejudice as the result of any individual errors, he cannot prevail on a cumulative effect claim unless he demonstrates how the particular cumulation requires a different analysis." ***Commonwealth v. Hutchinson***, 25 A.3d 277, 351-52 (Pa. 2011) (citation omitted). Additionally, "no number of failed claims may collectively warrant

relief i[f] they fail to do so individually." ***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1150 (Pa. 2012) (citation omitted). However, "[w]hen the failure of individual claims is grounded in lack of prejudice, . . . then the cumulative prejudice from those individual claims may properly be assessed." ***Commonwealth v. Koehler***, 36 A.3d 121, 161 (Pa. 2012).

Here, Pankery's ineffectiveness claims fail for the lack of arguable merit of the underlying claims. Those claims do not afford a basis for finding cumulative prejudice. His other claims do not collectively establish prejudice because of the overwhelming evidence against Pankery, including his statement to police.

Order affirmed. Application for Leave to File Post-Submission Communication Letter denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/29/2025